IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GEORGE R. SCHWEERS AND
MARIANNE M. SCHWEERS
FAMILY TRUST, et al.,

    Plaintiff,

No. CIV 99-162 MV/DJS

vs.

MARK HOVATEN and ELEANOR
HOVATEN d/b/a EAGLE RANCH
and MEDIACOM d/b/a RIDGENET,

    Defendants.

# MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendant Mediacom's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), filed April 15, 1999 **[Doc. No. 8]**, and Plaintiff's Conditional Motion to Stay Defendant Mediacom's Motion to Dismiss Complaint for Lack of Personal Jurisdiction, filed April 28, 1999 **[Doc. No. 13]**. The Court, having considered the motions, responses, replies, relevant law, and being otherwise fully informed, finds that Mediacom's motion is well taken and will be **GRANTED** and that Plaintiff's Conditional Motion is not well taken and will be **DENIED**.

## BACKGROUND

Plaintiff George R. Schweers and Marianne M. Schweers Family Trust (the "Family Trust") filed a Complaint alleging trademark infringement, unfair competition and violations of the New Mexico Unfair Practices Act on February 17, 1999. One of the defendants, Mediacom California LLC ("Mediacom"), filed its Motion to Dismiss for lack of personal jurisdiction on

April 15, 1999. Plaintiff opposes the motion, arguing that Mediacom is subject to general jurisdiction in New Mexico because of its persistent and pervasive Internet presence, its offers for sale of modems on its Web site and the federal nature of its business, which requires a license from the Federal Communications Commission ("FCC"). Plaintiff claims that Mediacom is also subject to specific jurisdiction in New Mexico because of its Internet presence, its business of offering Internet access to subscribers who pay a fee and its sales of modems over the Internet.

Plaintiff is a New Mexico pistachio farmer/grower that owns the federal trademark registration for the name "Eagle Ranch" as applied to the sale of pistachio nuts. In 1997, the Family Trust wrote letters to both Mediacom and the other Defendants in this action, Mark and Eleanor Hovaten, after learning of alleged infringing uses of the "Eagle Ranch" mark to promote the pistachios grown by the Hovatens at their Southern California farm. The allegedly infringing uses of the "Eagle Ranch" mark were found on Mark Hovaten's Web site maintained by Mediacom, a business directory listing maintained by Mediacom, and as a metatag maintained by Mediacom. As a result of the letter, Mediacom shut down the Hovatens' site.

Sometime in 1998, after the removal of the Web site, Mediacom reposted a revised Web site and metatags and added a listing for "Eagle Ranch" to its own business directory. Currently, the name "Eagle Ranch" appears on the page, but clicking on the page brings up an error message that the site cannot be found.

Mediacom is a Delaware limited liability corporation authorized to do business in the State of California with its main office located in Middletown, New York and its business operations in California. Mediacom is the operating subsidiary of Mediacom LLC, a New York limited liability corporation. Mediacom LLC owns 99% of the membership interests in Mediacom California

LLC with the remaining 1% owned by Mediacom Management Corporation, a New York corporation. Through a management agreement with Mediacom LLC, Mediacom Management Corporation operates the systems owned by Mediacom California LLC. Mediacom Management does not own or lease any real estate in New Mexico and it does not have any management agreements with any cable television systems in the State of New Mexico. Mediacom California LLC, Mediacom LLC and Mediacom Management have no business contacts with New Mexico.

Mediacom LLC, through Mediacom California LLC, owns and operates several cable television systems in the State of California providing cable television service to subscribers in several smaller California cities. Neither Mediacom California LLC nor any other operating subsidiary of Mediacom LLC owns cable television systems in the State of New Mexico.

Ridgenet.net was founded in 1994 by the Ridgecrest Redevelopment Agency in Ridgecrest, California to serve as an Internet service provider ("ISP") for the City of Ridgecrest. In December 1996, Mediacom acquired an ISP from the City of Ridgecrest, California that currently operates under the assumed name of RidgeNet. Mediacom, through Ridgenet.net, owns, maintains and controls computers that are connected to the Internet.

As an ISP, Mediacom provides full Internet access to subscribers who pay an access fee. For this access fee, a subscriber gets complete Internet access and memory storage space. Usually, subscribers use the memory storage space to store personal files, personal electronic mail or store electronic files containing computer programming called Hypertext Markup Language ("HTML"). These HTML documents, when viewed by an Internet browser program, are then converted to a published document for viewing by anyone on the Internet as Web pages. When the Web pages are available for viewing on the Internet, the pages are commonly referred to as a

"Web site." Mediacom does not monitor the activities of its subscribers, does not monitor the content of the files stored by its subscribers and does not monitor the content of Web pages set up by its subscribers. Mediacom offers to sell cable modems to non-Mediacom subscribers on the RidgeNet Web site.

Mediacom does not maintain a New Mexico phone number or any type of mailing address in New Mexico. Mediacom has no employees in New Mexico. Mediacom does not own or lease property in New Mexico. Mediacom has not sold or provided any services to anyone in New Mexico. Mediacom does not have any accounts with a New Mexico mailing address. Mediacom has not sent any written correspondence, including advertising, to anyone in New Mexico. Neither Mediacom's own web pages nor RidgeNet's web pages mention New Mexico. Mediacom has not solicited anyone in New Mexico by telephone. Mediacom has never sent a representative to physically visit New Mexico.

## STANDARD OF REVIEW

Due Process requires that a defendant have sufficient "minimum contacts" with the forum "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945). Courts can exercise either general or specific jurisdiction. General jurisdiction allows a court to exercise personal jurisdiction over a non-resident defendant for non-forum related activities when the defendant has engaged in "systematic and continuous" activities in the forum state. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414-16 (1984).

Specific jurisdiction is found where a defendant has "purposefully directed" its activities toward the forum state and the lawsuit is based on injuries that "arise out of" or "relate to" the

defendant's contact with the state. *Burger King*, 471 U.S. at 472. A defendant need not be physically present in a state as long as its efforts are purposefully directed toward forum residents. *Id.* at 476. Contacts resulting from the "unilateral activity of another party or third person" are not attributable to a defendant. *Id.* at 475 & n.17.

Even though this case involves a federal question, jurisdiction is determined by the law of the forum state. James W. Moore, Moore's Federal Practice (3d ed 1999) § 108.60[3][a] at 108-100 ("Federal courts must apply the relevant state [long-arm] statute even when the cause of action is purely federal."). In New Mexico, personal jurisdiction is determined by the long-arm statute and constitutional due process standards. *Caba LLC v. Mustang Software, Inc.*, No.18842, 1999 WL 428242, at *8 (N.M. Ct. App. May 25, 1999).

New Mexico's long-arm statute provides, in relevant part:

> A. Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:
> (1) the transaction of any business within this state;
> (2) the operation of a motor vehicle upon the highways of this state;
> (3) the commission of a tortious act within this state;
> (4) the contracting to insure any person, property or risk located within this state at the time of contracting . . . .

N.M. Stat. Ann. § 38-1-16(A) (Michie 1971). New Mexico has consolidated the statutory and constitutional requirements of the long-arm statute into a three-part test. *F.D.I.C. v. Hiatt*, 117 N.M. 461, 463, 872 P.2d 879, 881 (1991)*; Caba,* 1999 WL 428242, at *8. The jurisdictional test requires that: 1) defendant must do one of the acts enumerated in N.M. Stat. Ann. § 38-1-16(A); 2) plaintiff's cause of action must arise from the specified act; and 3) defendant must have

5

minimum contacts sufficient to satisfy due process. *Id*.

The standard governing a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is well-established:

> The plaintiff bears the burden of establishing personal jurisdiction over the defendant. Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a prima facie showing. The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits. If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party.

*Behagan v. Amateur Basketball Ass'n*, 744 F.2d 731, 733 (10th Cir. 1984) (internal cites omitted).

## ANALYSIS

**I.　Mediacom's Motion to Dismiss.**

　　A.　<u>General Jurisdiction.</u>

The Court finds that it does not have general or specific jurisdiction over Mediacom. Starting with general jurisdiction, Mediacom does not have any physical presence in New Mexico, nor is it registered to do business here. Mediacom has not directed any sales efforts to the state, nor has it sold anything to New Mexico residents. In short, there is nothing in the record to suggest that Mediacom has anything like the "systematic and continuous contacts" required to find general jurisdiction.

None of the contacts pointed to by the Family Trust change this result. The Family Trust notes that Mediacom has a license granted by the FCC to engage in the communications industry and that it might pass its transmissions through towers or satellites located in New Mexico.

However, Mediacom's license requires it to obtain a franchise from the local community in order to operate there. Mediacom has never applied for or received a franchise anywhere in New Mexico. Additionally, Mediacom does not own or lease any equipment in New Mexico, does not rent any land in New Mexico for telecommunications purposes and does not transmit any electronic signals to any broadcast station licensed in New Mexico. The Family Trust cites no case law supporting its claim that a license from the FCC subjects a company to jurisdiction in every state, regardless of its presence there, and the Court finds that this argument is contrary to established principles requiring a continuous and systematic presence in the forum state.

Plaintiff also argues that jurisdiction may be based on Mediacom's Internet presence, including its business of providing full Internet access to subscribers who pay an access fee, its offer to sell cable modems to non-Mediacom subscribers on the RidgeNet Web site, and the presence of the RidgeNet Web site. The Court is not aware of any case in which a court asserted general jurisdiction based on the existence of a Web site. The Court agrees with a California court that found that "allowing computer interaction via the web to supply sufficient contacts to establish jurisdiction would eviscerate the personal jurisdiction requirement as it currently exists." *McDonough v. Fallon McElligot, Inc.,* 40 U.S.P.Q.2d 1826, 1828 (S.D. Cal. 1996); *see also Millennium Enterprises v. Millennium Music, LP,* 33 F. Supp.2d 907, 911, 916 (D. Or. 1999) (not aware of any case finding general jurisdiction based on a Web site). Because Mediacom does not have any business contacts with New Mexico and has no presence here, the Court does not have general jurisdiction over the company.

B.  Specific Jurisdiction.

The Court also lacks specific jurisdiction over Mediacom. Applying the three-part test for

jurisdiction under the New Mexico long-arm statute, the Court must first determine whether Mediacom transacted business within New Mexico. *F.D.I.C. v. Hiatt*, 117 N.M. 461, 463, 872 P.2d 879, 881 (1991). Transaction of business has been determined by the following factors: (1) who initiated the transaction; (2) where the transaction was entered into; and (3) where the performance was to take place. *See Caba,* 1999 WL 428242*,* at *9 (quoting *Pelton v. Methodist Hosp*., 989 F. Supp. 1392 (D. N.M. 1997)).

While there are no New Mexico cases that discuss the issue of Web site commercial activity and personal jurisdiction, there are cases involving more traditional means of communication with a New Mexico resident from out of state. "[O]rdinarily, 'use of the mails, telephone or other international communications simply do not qualify as purposeful activity invoking the benefits and protection of the [forum] state.'" *Sanchez v. Church of Scientology*, 115 N.M. 660, 664 (1993)(citation omitted). New Mexico Courts have repeatedly rejected claims of personal jurisdiction based on sending communications from outside the state into New Mexico. *See, e.g., Id.* (phone calls and mailings from California and two attempts to contact New Mexico residents)*; Valley Wide Health Services, Inc. v. Graham*, 106 N.M. 71 (1987) (phone call from Colorado to New Mexico)*; Diamond A Cattle Co. v. Broadbent*, 84 N.M. 469 (1973) (mailing three things to New Mexico).

As the New Mexico Supreme Court explained, "'a central factor in determining whether these 'minimum contacts were established is the degree to which defendant *purposefully initiated* its activity within the state.'" *Valley Wide Health Services*, 106 N.M. at 73 (emphasis in original)(citation omitted). "To sustain personal jurisdiction over a non-resident defendant, '[i]t is *essential* in each case that there be some act by which the defendant *purposefully avails itself of*

*the privilege of conducting activities within the forum State*, thus invoking the benefits and protections of its law.'" *Id.* (emphasis in original) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).

This reasoning precludes any finding that Mediacom has transacted business within the state based on its posting of a Web site on the Internet. Like a phone call to New Mexico, a Web site is not in any way "purposefully initiated" within New Mexico. The RidgeNet Web site does not mention New Mexico or in any way indicate that Mediacom intends to or is conducting activities here. While Mediacom does offer to sell certain products and services over the Internet, Mediacom has not sold or provided any services to anyone in New Mexico. Mediacom does not have any accounts with a New Mexico mailing address. Mediacom has not sent any written correspondence, including advertising, to anyone in New Mexico. Like making a telephone call or sending a letter to New Mexico, the offering of services on a Web site without more directed to New Mexico does not suggest in any way that the defendant has "purposefully availed" itself of the forum. Pursuant to the reasoning in these analogous cases, the Court finds that Web site does not satisfy the requirements of specific jurisdiction.

This finding comports with the analysis of the vast majority of other courts that have considered whether commercial activities conducted on the Internet can satisfy the "minimum contacts" required to establish specific jurisdiction. Two early cases set the standard adopted by more recent decisions in evaluating a claim of specific jurisdiction based on a Web site. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997); *Bensusan Restaurant Corp., v. King*, 937 F. Supp. 295 (S.D.N.Y.1996). In *Zippo*, 952 F. Supp. at 1123, the court explained:

> the likelihood that personal jurisdiction can be constitutionally
> exercised is directly proportionate to the nature and quality of
> commercial activity that an entity conducts over the Internet. This
> sliding scale is consistent with well developed personal jurisdiction
> principles. At one end of the spectrum are situations where a
> defendant clearly does business over the Internet. If the defendant
> enters into contracts with residents of a foreign jurisdiction that
> involve the knowing and repeated transmission of computer files
> over the Internet, personal jurisdiction is proper. *E.g. CompuServe,
> Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996). At the opposite
> end are situations where a defendant has simply posted information
> on an Internet Web site which is accessible to users in foreign
> jurisdictions. A passive Web site that does little more than make
> information available to those who are interested in it is not
> grounds for the exercise personal jurisdiction. *E.g. Bensusan
> Restaurant Corp., v. King*, 937 F. Supp. 295 (S.D.N.Y.1996). The
> middle ground is occupied by interactive Web sites where a user
> can exchange information with the host computer. In these cases,
> the exercise of jurisdiction is determined by examining the level of
> interactivity and commercial nature of the exchange of information
> that occurs on the Web site. *E.g. Maritz, Inc. v. Cybergold, Inc.*,
> 947 F. Supp. 1328 (E.D. Mo.1996).
> 952 F. Supp. 1119

952 F. Supp. at 1124. Most courts follow this reasoning, finding that Web site advertising alone, without any business activity or interactivity, does not meet the requirements of Due Process. *Millennium Enterprises v. Millennium Music, LP,* 33 F. Supp.2d 907, 911, 916 (D. Or. 1999) (no specific jurisdiction in trademark infringement case based on interactive Web site because Web site did not give fair warning of possibility of suit in forum state; citing long list of cases); *Patriot Systems, Inc. v. C-Cubed Corp.*, 21 F. Supp.2d 1318 (D. Utah 1998) (no specific jurisdiction in copyright infringement case based on passive advertisement on defendant's Web site); *Hotel Co. v. Energy Investments*, 985 F. Supp. 1032 (D. Kan. 1997) (no specific jurisdiction in trademark infringement action based on passive Web site); *Transcraft Corp. v. Doonan Trailer Corp.*, 45 U.S.P.Q.2d 1097 (N.D. Ill. 1997) (no specific jurisdiction in trademark infringement case based

on passive Web site plus trailers painted with the infringing mark traveling on Illinois roads); *Bensusan Restaurant Corp. v. King*, 937 F. Supp. 295 (S.D.N.Y. 1996) (no specific jurisdiction in trademark infringement case based on passive Web site).

At the other end of the spectrum, courts have exercised jurisdiction where the defendant "conducted business" over the Internet by engaging in repeated or ongoing business transactions with forum residents or where the suit involves a contract entered into between the parties through the Internet. *See, e.g., CompuServe v. Patterson*, 89 F.3d 1257 (6th Cir. 1996); *Thompson v Handa-Lopez, Inc.*, 998 F. Supp. 738 (W.D. Tex. 1998) (defendant entered into contract with plaintiff to play casino-type arcade game through defendant's Web site); *Zippo*, 952 F. Supp. at 1125-26 (defendant entered into contracts with 3,000 residents and several Internet access providers in the forum state).

The cases addressing the middle "interactive" category identified in *Zippo* have come to different conclusions on what is required to find specific jurisdiction. Some courts have found that an interactive Web site alone is enough to establish minimum contacts. *See, e.g., Maritz, Inc. v. Cybergold, Inc.*, 947 F. Supp. 1328 (E.D. Mo. 1996) (Web site invited users to join a mailing list and assumed that the list would "presumably includ[e] many residents of the [forum state]"); *Superguide v. Kegan*, 987 F. Supp. 481 (W.D. N.C. 1997) (court found jurisdiction based on interactive Web site, and assumed that forum state residents had accessed the site and used defendant's commercial services).

Other courts have required additional conduct in the forum related to plaintiff's cause of action. *See, e.g., Edberg v. Neogen*, 17 F. Supp.2d 104 (D. Conn. 1998) (finding no jurisdiction absent evidence that forum state resident had accessed the defendant's Web site or purchased

11

products through the Web site); *E-Data Corp. v. Micropatent Corp.*, 989 F. Supp. 173 (D. Conn. 1998) (potential to reach and sell to forum state residents insufficient); *Park Inns International v. Pacific Plaza Hotels, Inc.*, 5 F. Supp.2d 762, 764-65 (D. Ariz. 1998) (finding jurisdiction where defendants had accepted hotel reservations from forum residents through interactive Web site); *America Network, Inc. v Access America/Connect Atlanta, Inc.*, 975 F. Supp. 494 (S.D.N.Y. 1997) (finding jurisdiction where defendant had sold Internet service subscriptions to forum state residents).

Here, Mediacom's Web site seems to fall within this middle zone of interactivity. Mediacom offers to sell Internet subscription services and modems over its Web site. It has not entered into contracts with forum residents or repeatedly transmitted computer files to the forum state over the Internet, so the Court finds that it does not fall within the "doing business" end of the spectrum. *See, e.g., Millennium*, 33 F. Supp.2d at 920 (defendant does not satisfy the requirements of "doing business" over the Internet by putting up a site through which it sells compact discs). Neither does Mediacom's Web site fall at the other end of the spectrum since it does more than passively provide information.

The Court then must look to the "level of interactivity and commercial nature of the exchange of information" to determine whether to exercise jurisdiction. *Zippo*, 952 F. Supp. at 1124. The Court will follow those courts that have found that this category of Internet contacts should include some "deliberate action" within the forum state in the form of transactions between the defendant and residents of the forum or conduct purposefully directed toward the forum. *Millennium*, 33 F. Supp.2d at 921; *Park Inns International*, 5 F. Supp.2d 762, 764-65; *America Network,* 975 F. Supp. 494. As the Ninth Circuit explained in a case involving an essentially

12

passive Web site, the defendant "did nothing to encourage people in [the forum state] to access its site, and there is no evidence that any part of its business (let alone a continuous part of its business) was sought or achieved [in the forum state]. . . . In short, [the defendant] has done no act and consummated no transaction, nor has it performed any act by which it purposefully availed itself of the privilege of conducting activities in [the forum state], thereby invoking the benefits and protections of [the forum state's] law." *Cybersell, Inc. v. Cybersell Inc.*, 130 F.3d 414, 419 (9th Cir. 1997).

This reasoning applies equally well to the case at hand. Mediacom has not made any sales or deliberately contacted anyone in New Mexico. Mediacom does offer commercial services on its Web site, but the presence of the site without more does not give the company "faire warning" such that it would reasonably anticipate being "haled" into court here. Mediacom has not created a "substantial connection" with New Mexico, deliberately engaged in "significant activities" here or created "ongoing obligations" with New Mexico residents. *See Burger King*, 471 U.S. at 473, 475-76; *Millennium*, 33 F. Supp.2d at 921.

The Court declines to follow older, less well reasoned cases that held that Web site advertising alone satisfies the requirements of state long arm statues and due process. *See, e.g., Inset Systems, Inc., v. Instruction Set, Inc.*, 937 F. Supp. 161, 161 (D. Conn. 1996). As explained in a recent decision from the District of Oregon, "the trend has shifted away from finding jurisdiction based solely on the existence of Web site advertising." *Millennium*, 33 F. Supp.2d at 915. This trend has resulted in part because "'a finding of jurisdiction . . . based on an Internet Web site would mean that there would be nationwide (indeed, world wide) personal jurisdiction over anyone and everyone who establishes an Internet Web site. Such nationwide

jurisdiction is not consistent with personal jurisdiction case law.'" *Remick v. Manfredy*, No.CIV.A.99-CV-0025, __ F. Supp.2d __, 1999 WL 257754, at *3, (E.D. Pa. Apr. 22, 1999) (quoting *Weber v. Jolly Hotels, Inc.*, 977 F. Supp. 327, 333 (D. N.J. 1997), quoting *Hearst Corp. v. Goldberger*, No. 96 Civ. 2620, 1997 WL 97097, at *1 (S.D.N.Y. Feb. 26, 1997)).

Nor does the Court accept Plaintiff's argument that Mediacom is subject to personal jurisdiction in New Mexico because its allegedly infringing activity caused harm to New Mexico residents. In *Calder v. Jones*, 466 U.S. 783, 789-90, the Supreme Court held that specific jurisdiction can be asserted over defendants who direct their tortious conduct to the forum state, knowing the effects of the conduct will cause harm. However, there is nothing in the record to indicate any actions by Mediacom directed to this forum. A Web site by its nature is not directed to any one place, and nothing on Mediacom's Web site is in any way directed to New Mexico. *See Millennium*, 33 F. Supp.2d at 912 & n.2 (even assuming defendants knew of plaintiff's existence, Web site does not show that defendants directed their conduct at the forum state).

Finally, the Court rejects Plaintiff's claim that Mediacom is subject to jurisdiction in New Mexico because the company received letters from Plaintiff's New Mexico counsel. The Supreme Court has explained that contacts resulting from the "unilateral activity of another party or third person" are not attributable to a defendant. *Burger King,* 471 U.S. at 475 & n.17. Moreover, as set forth above, who initiated the transaction is an important factor in evaluating whether a defendant is transacting business, a requirement to find jurisdiction under the New Mexico long-arm statute. *Caba,* 1999 WL 428242, at *9. The Court finds that Mediacom was a passive recipient of the letter and that this action by Plaintiff cannot somehow create purposeful availment by the Defendant.

For these reasons, the Court lacks jurisdiction over Mediacom, and the company is dismissed from this case.

**II.     Plaintiff's Conditional Motion to Stay Defendant Mediacom's Motion to Dismiss Complaint for Lack of Personal Jurisdiction.**

The Family Trust has filed a motion asking that the Court allow time for jurisdictional discovery concerning Mediacom should it find that jurisdiction is lacking. However, the Court has already found that it does not have jurisdiction over the other Defendants in this case, Mark and Eleanor Hovaten. Plaintiff is not asking for discovery concerning jurisdiction over the Hovatens, having conceded that its only basis for asserting jurisdiction over the Hovatens was their passive Web site. Since Plaintiff's claims against the Hovatens and Mediacom are intertwined, they should be decided in one forum. It makes no sense then, for the Court to allow the Family Trust to attempt to find facts that would establish jurisdiction over Mediacom in this forum. Because the Hovatens are not subject to jurisdiction in this forum, and Plaintiff can establish jurisdiction over all Defendants in California, the Court will deny the request for discovery.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Mediacom's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2), filed April 15, 1999 **[Doc. 8]**, is hereby **GRANTED**, and Defendant Mediacom is dismissed from this action. Plaintiff's Conditional Motion to Stay Defendant Mediacom's Motion to Dismiss Complaint for Lack of Personal Jurisdiction, filed April 28, 1999 **[Doc. No. 13]**, is hereby **DENIED.**

Having dismissed the other two Defendants in this action by a Memorandum Opinion and Order filed August 31, 1999, this case is hereby **DISMISSED IN ITS ENTIRETY.**

_____
MARTHA VÁZQUEZ
U. S. DISTRICT COURT JUDGE

Attorney for Plaintiff:
Martin K. Holland
Maurice U. Cahn

Attorney for Defendant Mediacom:
Kevin Lynn Wildenstein
DeWitt M. Morgan

Attorney for Defendants Mark and Eleanor Hovaten:
Roberta M. Price